**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian (SBN: 249203)
ak@kazlg.com
245 Fischer Avenue, Suite D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**KAZEROUNI LAW GROUP, APC**
Jason A. Ibey (SBN: 284607)
jason@kazlg.com
321 N Mall Drive, Suite R108
St. George, Utah 84790
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

Attorneys for Plaintiffs,
*Sherry Hogan & Daniel Altman*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA—EASTERN DIVISION

| | |
|---|---|
| SHERRY HOGAN & DANIEL ALTMAN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>FREEDOM MORTGAGE CORPORATION,<br><br>Defendant. | Case No. 5:21-cv-782<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR VIOLATIONS OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT, 12 U.S.C. §§ 2601, *ET SEQ*.**<br><br>**JURY TRIAL DEMANDED** |

**INTRODUCTION**

1. Sherry Hogan ("Ms. Hogan") and Daniel Altman ("Mr. Altman") (together the "Plaintiffs") bring this class action Complaint, by and through their attorneys, against defendant Freedom Mortgage Corporation ("Defendant" or "Freedom Mortgage") for its violations of the Real Estate Settlement Procedures Act.

2. As detailed further below, Plaintiffs allege that Freedom Mortgage failed to provide them with timely responses to their qualified written requests while also failing to provide them the audio recordings they requested, in violation of the Real Estate Settlement Procedures Act.

3. Plaintiffs make these allegations on information and belief, with the exception of those allegations that pertain to Plaintiffs, or to Plaintiffs' counsel, which Plaintiffs allege on personal knowledge.

4. While many violations are described below with specificity, this Complaint alleges violations of each statute cited in its entirety.

5. Unless otherwise indicated, the use of Freedom Mortgage's name in this Complaint includes its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

6. Congress found "that significant reforms in the real estate settlement process are needed to insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country." 12 U.S.C. § 2601(a). To address this finding, Congress passed the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.*, ("RESPA") in 1974.

7. The Consumer Financial Protection Bureau ("CFPB") is authorized by Congress to supervise and enforce compliance of RESPA. 12 U.S.C. § 2617(a). As a

result, the CFPB periodically issues and amends mortgage servicing rules under Regulation X, 12 C.F.R. § 1024, RESPA's implementing regulation.

8. Under RESPA and Regulation X, a loan servicer like Freedom Mortgage must provide borrowers with specific account information available to it in the regular course of business upon receiving a qualified written request ("QWR") from the borrower. 12 U.S.C. § 2605(e)(1)(A).

9. A QWR can be either a Request for Information ("RFI") or a Notice of Error ("NOE"). *See St. Claire v. Ditech Fin., LLC*, No. 1:17-CV-3370-AT-JFK, 2018 WL 4850127, at *3 (N.D. Ga. Sept. 21, 2018), *reconsideration denied in* No. 1:17-CV-3370-AT, 2018 WL 8459491 (N.D. Ga. Oct. 23, 2018).

10. A servicer's response to a QWR differs depending on whether the QWR is an RFI or an NOE. *Compare* 12 U.S.C. § 2605(e)(2)(B) *and* 12 C.F.R. § 1024.35 *with* 12 U.S.C. § 2605(e)(2)(C) *and* 12 C.F.R. § 1024.36.

11. Within five days of receiving a QWR, a servicer must acknowledge receipt unless the action requested is taken within such period. 12 U.S.C. § 2605(e)(1)(A). In the absence of acting within five days of its receipt of a QWR, a servicer must undertake its responsibilities under RESPA no later that 30 days of its receipt of the QWR. 12 U.S.C. § 2605(e)(2).

12. A servicer must respond to an NOE by: (1) correcting the information and providing the borrower with written notice of the correction; or (2) conducting a "reasonable investigation" and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, with reasons for the determination. 12 U.S.C. § 2605(e)(2)(B); 12 C.F.R. § 1024.35(e)(1)(i)(A)–(B). On the other hand, a servicer must respond to an RFI by: (1) providing the requested information; or (2) conducting a "reasonable search" for the requested information, providing the borrower with a written notification explaining the basis for the servicer's determination that the requested information is "not available." 12 U.S.C. § 2605(e)(2)(C); 12 C.F.R. § 1024.36(d)(1)(i)–(ii).

13. In its official commentary to Regulation X, the CFPB outlines what constitutes as information that is "not available." Information is "not available" if: "[(1.)] The information is not in the servicer's control or possession, or [(2.)] The information cannot be retrieved in the ordinary course of business through reasonable efforts." 12 C.F.R. § 1024, Supp. I, ¶ 36(d)(1)(ii).

14. As an example of "available" information, the CFPB provides the following in its official commentary to Regulation X:

> A borrower requests **a copy of a telephonic communication with a servicer.** The servicer's personnel have access in the ordinary course of business to **audio recording files** with organized recordings or transcripts of borrower telephone calls and can identify the communication referred to by the borrower through reasonable business efforts. **The information requested by the borrower is available to the servicer.**

12 C.F.R. § 1024, Supp. I, ¶ 36(d)(1)(ii) (emphasis added).

15. Freedom Mortgage has failed to fulfill its duty to provide information available to it in the regular course of business upon its receipt of Plaintiffs' RFIs.

16. As alleged in greater detail below, Freedom Mortgage has demonstrated a "pattern or practice" of failing to adequately respond to borrowers' requests for account information, which makes Freedom Mortgage liable for statutory damages in an amount up to $2,000 for each failure to adequately respond. 12 U.S.C. § 2605(f).

17. Notwithstanding this glaring failure to abide by its statutory duty, and despite Plaintiffs' informing Freedom Mortgage of its failure, Freedom Mortgage continues to deny Plaintiffs' and other borrowers' reasonable requests for account information.

**JURISDICTION AND VENUE**

18. This Court has subject matter jurisdiction over this action pursuant to RESPA, 12 U.S.C. § 2614, and generally pursuant to 28 U.S.C. § 1331, because the action arises out violations of federal law.

19. This Court has personal jurisdiction over Freedom Mortgage because Freedom Mortgage conducts business in California and maintains sufficient contacts with the state and this federal district.

20. Venue is appropriate in the United States District Court for the Central District, Eastern Division of California pursuant to 28 U.S.C. § 1391 for the following reasons: (i) Ms. Hogan resides in Riverside County, California, which is within this judicial district; (ii) the conduct complained of herein occurred within this judicial district; and (iii) Freedom Mortgage conducted business within this judicial district at all relevant times.

## PARTIES

21. Sherry Hogan, an individual, is a resident and citizen of Riverside County in the State of California.

22. Daniel Altman, an individual, is a resident and citizen of the State of California.

23. Upon information and belief, Freedom Mortgage is a business incorporated in New Jersey.

24. Upon information and belief, Freedom Mortgage conducts mortgage servicing operations through its mortgage division, which upon information and belief, is headquartered at 951 Yamato Road, Suite 175, Boca Raton, FL 33431.

## FACTUAL ALLEGATIONS

**A. Facts Relevant to Sherry Hogan**

25. Ms. Hogan incorporates by reference all the above paragraphs of this complaint as if fully stated herein.

26. Freedom Mortgage services Ms. Hogan's mortgage loan.

///

///

27. On December 8, 2020, Ms. Hogan, through counsel, mailed a QWR[1] to Freedom Mortgage at the address it designated for these types of requests: P.O. Box 50428 Indianapolis, IN 46250-0401.

28. In this letter, Ms. Hogan included her name, her loan account number, a statement disputing the validity of her debt, and requests for documents and information associated with her account, including: "A copy of any and all recordings of [Ms. Hogan's] or any other person concerning [Ms. Hogan's] account."

29. The QWR was both a Notice of Error and a Request for Information pursuant to 12 U.S.C. § 2605(e) and 12 C.F.R. §§ 1024.35, 1024.36, because Ms. Hogan disputed the validity of the debt she allegedly owes and because she requested information regarding the servicing of her loan.

30. On or about February 1, 2021, Ms. Hogan received written correspondence dated January 22, 2021, in which Freedom Mortgage indicated that it received Ms. Hogan's QWR on December 14, 2020.

31. Ms. Hogan had not received a written response from Freedom Mortgage within the five days following its receipt of the QWR, as required under 12 U.S.C. § 2605(e)(1)(A).

32. Nevertheless, in this correspondence, Freedom Mortgage provided some information and documents to Ms. Hogan relating to the alleged debt, but it failed to provide (or acknowledge) her request for any audio recordings between herself and Freedom Mortgage.

33. Due to Freedom Mortgage's failure to provide the requested recordings, Ms. Hogan, through her counsel, sent a follow up correspondence to Freedom Mortgage on February 22, 2021. Ms. Hogan specifically requested in her written letter that Defendant provide the audio recordings, which the CFPB's commentary to

---

[1] Ms. Hogan's QWR was mailed with an authorization to furnish and release information to her counsel, as permitted in 12 U.S.C. § 2605(e)(1)(A).

1  Regulation X specifically contemplates as requested information. *See* 12 C.F.R. §
2  1024, Supp. I, ¶ 36(d)(1)(ii).

3      34.    The follow up correspondence was sent to Freedom Mortgage through the United States Postal Service via Priority Mail, costing approximately $7.95, which was reasonably sent in an effort to obtain Freedom Mortgage's compliance with RESPA.

      35.    On or about April 21, 2021, Freedom Mortgage responded to Ms. Hogan's February 22, 2021 letter via a correspondence dated April 14, 2021.

      36.    In this correspondence, Freedom Mortgage again failed to provide any of the requested AUDIO recordings. Instead, Freedom Mortgage denied Ms. Hogan's request by stating: "A servicer is not required to respond to request for information irrelevant to a borrower's loan or to requests that seek confidential, privileged, or proprietary information. In addition, a servicer is not required to provide information or documentation that is not in the servicer's control or possession or that cannot be retrieved in the ordinary course of business through reasonable efforts."

      37.    As of this lawsuit's filing date, Ms. Hogan has not received any other documents from Freedom Mortgage, including the requested audio recordings.

**B. Facts Relevant to Daniel Altman**

      38.    Mr. Altman incorporates by reference all the above paragraphs of this Complaint as if fully stated herein.

      39.    Freedom Mortgage services Mr. Altman's mortgage loan.

      40.    On December 21, 2020, Mr. Altman, through counsel, mailed a QWR[2] to Freedom Mortgage at the address it designated for these types of requests: P.O. Box 50428 Indianapolis, IN 46250-0401.

      41.    Like Ms. Hogan, Mr. Altman included in his letter, his name, his loan account number, a statement disputing the validity of his debt, and requests for

---

[2] Mr. Altman's QWR was mailed with an authorization to furnish and release information to his counsel, as permitted in 12 U.S.C. § 2605(e)(1)(A).

- 7 -
CLASS ACTION COMPLAINT

documents and information associated with his account, including: "A copy of any and all recordings of [Mr. Altman's] or any other person concerning [Mr. Altman's] account."

42. Mr. Altman's QWR was both a Notice of Error and a Request for Information pursuant to 12 U.S.C. § 2605(e) and 12 C.F.R. §§ 1024.35, 1024.36, because Mr. Altman disputed the validity of the debt he allegedly owes and because he requested information relating to the servicing of his loan.

43. On or about February 11, 2021, Mr. Altman received written correspondence dated February 2, 2021 in which Freedom Mortgage indicated that it received Mr. Altman's QWR on December 28, 2020.

44. Mr. Altman had not received a written response from Freedom Mortgage within the five days following its receipt of the QWR, as required under 12 U.S.C. § 2605(e)(1)(A).

45. In this correspondence, Freedom Mortgage provided some information and documents to Mr. Altman to substantiate the validity of the debt, but it refused to provide other information or documents, writing: "A servicer is not required to respond to request for information irrelevant to a borrower's loan or to requests that seek confidential, privileged, or proprietary information. In addition, a servicer is not required to provide information or documentation that is not in the servicer's control or possession or that cannot be retrieved in the ordinary course of business through reasonable efforts."

46. In response, Mr. Altman, through his counsel, sent a written follow up correspondence to Freedom Mortgage.[3]  Mr. Altman again requested that Defendant send any audio recordings between himself and Freedom Mortgage to his counsel.

---

[3] On February 11, 2021, Mr. Altman sent a follow up correspondence that included an incorrect response deadline. As a result, Mr. Altman sent a second follow up correspondence on February 22, 2021, asking for the audio recordings to be produced by March 1, 2021.

47. The follow up correspondence was sent to Freedom Mortgage through the United States Postal Service via Priority Mail, costing approximately $7.95, which was reasonably sent in an effort to obtain Freedom Mortgage's compliance with RESPA.

48. On or about March 23, 2021, Mr. Altman received correspondence from Freedom Mortgage dated March 15, 2021.

49. In this correspondence, Freedom Mortgage again failed to provide any of the requested recordings. Freedom Mortgage instead cited the same boilerplate language it cited in its first response, stating: "A servicer is not required to respond to request for information irrelevant to a borrower's loan or to requests that seek confidential, privileged, or proprietary information. In addition, a servicer is not required to provide information or documentation that is not in the servicer's control or possession or that cannot be retrieved in the ordinary course of business through reasonable efforts."

50. As of this lawsuit's filing date, Mr. Altman has also not received any further documents from Freedom Mortgage, including the requested audio recordings.

51. Plaintiffs are informed and believe that Freedom Mortgage received similar requests from other customers within one year prior to the filing of this Complaint.

52. Plaintiffs requested audio recordings in their QWRs, but Freedom Mortgage refused to provide the recordings. Instead, Freedom Mortgage unjustifiably claimed in both instances that it was not required to respond to requests for information that are irrelevant to the borrowers' loans or to requests that seek confidential, privileged, or proprietary information.

53. Plaintiffs are informed and believe that Freedom Mortgage has refused to produce recordings for possibly hundreds of customers that have requested them.

///

///

54. Plaintiffs are informed and believe that Freedom Mortgage can easily produce the requested audio recordings through reasonable business efforts but chooses not to as a matter of corporate policy.

55. Plaintiffs are informed and believe that Freedom Mortgage did not review each account individually to determine if each consumer's audio recordings or transcripts was privileged, confidential and/or proprietary information.

56. Plaintiffs are informed and believe that several of the individuals that requested recordings from Freedom Mortgage had only a handful of conversations with Freedom Mortgage, which means the production of the recordings should be available through reasonable business efforts.

57. Plaintiffs are informed and believe that the audio recordings are not privileged or confidential, nor do they contain any proprietary information of Defendant's.

58. Freedom Mortgage's untimeliness in responding to QWRs and its failure to provide the requested information demonstrates a pattern or practice of non-compliance with RESPA, because Freedom Mortgage denied multiple requests for the audio recordings without providing an explanation of why the information requested was unavailable or could not be obtained.

59. Instead, Freedom Mortgage generally claimed that it was not required to respond to unduly burdensome, irrelevant, overbroad, confidential, privileged, or proprietary information. Freedom Mortgage, however, never explained how/why the audio recordings were unduly burdensome, irrelevant, overbroad, confidential, privileged, or proprietary information.

60. Plaintiffs requested the recordings at least two times each, but Freedom Mortgage failed to produce the recordings in each request, which further illustrates Freedom Mortgage's pattern or practice of non-compliance with RESPA.

61. Freedom Mortgage's "pattern or practice" of failing to adequately respond to borrowers' requests for account information makes it liable for statutory

damages in an amount up to $2,000 for each failure to adequately respond. 12 U.S.C. § 2605(f).

62. Notwithstanding this glaring failure to abide by its statutory duty, and despite Plaintiffs' informing Freedom Mortgage of its failure, Freedom Mortgage continues to deny Plaintiffs' and, on information and belief, other borrowers' reasonable requests for account information.

## CLASS ACTION ALLEGATIONS

63. Plaintiffs bring this action on behalf of themselves and on behalf of all others similarly situated, pursuant to Federal Rule Civil Procedure 23(b)(1), (b)(2) and/or (b)(3).

64. The putative class ("the Class") that Plaintiffs seek to represent is composed of:

> All persons within the United States who have or have had a mortgage loan with Freedom Mortgage and who within three years from the filing of this Complaint have requested copies of audio recordings or transcripts of phone calls between themselves and Freedom Mortgage pursuant to 12 U.S.C. § 2605(e)(1)(A) and 12 C.F.R. § 1024.36 and who have subsequently been denied access to those audio recordings by Freedom Mortgage.

65. Excluded from the Class are Freedom Mortgage's officers, directors, employees, affiliates, legal representatives, attorneys, heirs, and assigns, and any entity in which Freedom Mortgage has a controlling interest. Judicial officers presiding over this case, their staff, and immediate family members, are also excluded from the Class.

66. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of the Class members is unknown to Plaintiffs at this time, such information can be ascertained through discovery from records maintained by Freedom Mortgage.

67. There is a well-defined community of interest among the members of the Class because common questions of law and fact predominate, Plaintiffs' claims are typical of the members of the Class, and Plaintiffs can fairly and adequately represent the interests of the Class.

68. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are:

   a) Whether Freedom Mortgage failed to provide audio recordings of telephone calls between Freedom Mortgage and Class members as required under RESPA;

   b) Whether Freedom Mortgage failed to provide documents requested by Class members as required under RESPA;

   c) Whether Freedom Mortgage failed to conduct a "reasonable investigation" as required pursuant to 12 C.F.R. § 1024.36(d)(1)(i)–(ii);

   d) Whether Plaintiffs and the Class are entitled to damages under 12 U.S.C. § 2605(f);

   e) Whether Freedom Mortgage demonstrates a "pattern or practice" of failing to respond to borrowers' RFIs.

   f) Whether Freedom Mortgage's conduct violates 12 U.S.C. §§ 2601, *et seq.*; and

   g) Whether Plaintiffs and the putative Class members are entitled to injunctive relief as sought herein.

69. Plaintiffs' claims are typical of those of the other Class members because Plaintiffs, like every other Class member, requested documents including audio recordings or transcripts of telephone calls between themselves and Freedom Mortgage, but Freedom Mortgage refused to provide them.

///

70. Plaintiffs will fairly and adequately protect the interests of the Class. Moreover, Plaintiffs have no interests that are contrary to or in conflict with those of the Class they seek to represent during the Class period.

71. In addition, Plaintiffs have retained competent counsel experienced in Class action litigation to protect the interest of the Class and to prosecute this action vigorously.

72. The prosecution of separate actions by individual members of the Class and would create a risk of inconsistent or varying adjudications with respect to individual members of the Class and lead to repetitious trials of the numerous common questions of fact and law throughout the United States. Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a Class action. As a result, a Class action is superior to other available methods for the fair and efficient adjudication of this controversy.

73. Proper and sufficient notice of this action may be provided to the Class members through direct mail and email.

74. Moreover, the Class members' individual damages are insufficient to justify the cost of litigation, so that in the absence of Class treatment, Freedom Mortgage's violations of law inflicting substantial damages in the aggregate would not be remedied without certification of the Class.

75. Absent certification of this action as a Class action, Plaintiffs and the members of the Class will continue to be harmed by Freedom Mortgage.

## CAUSE OF ACTION

### Violations of Real Estate Settlement Procedures Act
### 12 U.S.C. §§ 2601, *et seq.*

76. Plaintiffs re-allege and incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

///

77. Plaintiffs' loans with Freedom Mortgage were at all times relevant "federally related mortgage loans" as defined by 12 U.S.C. § 2602(1).

78. Freedom Mortgage is, and was at all times relevant, a loan "servicer" as defined by 12 C.F.R. § 1024.3.

79. Plaintiffs and Freedom Mortgage are "persons" as defined by 12 U.S.C. § 2602(5).

80. A failure to follow regulations promulgated by the CFPB in Regulation X is *per se* a violation of RESPA. 12 U.S.C. § 2605(k).

81. Plaintiffs' requests for audio recordings were both RFIs pursuant to 12 U.S.C. § 2605(e)(1)(A) and 12 C.F.R. § 1024.36.

82. Audio recordings and transcripts of phone calls with borrowers are information "available in the regular course of business" to Freedom Mortgage. *See* 12 C.F.R. § 1024, Supp. I, ¶ 36(d)(1)(ii).

83. Freedom Mortgage failed to provide Plaintiffs with requested information available to Freedom Mortgage in the ordinary course of business. Consequently, Freedom Mortgage violated 12 U.S.C. § 2605(e), 12 U.S.C. § 2605(k), and 12 C.F.R. § 1024.36.

84. Freedom Mortgage further violated 12 U.S.C. § 2605(e), 12 U.S.C. § 2605(k), and 12 C.F.R. § 1024.36 by failing to adequately investigate and respond to Plaintiffs' requests.

85. Plaintiffs are informed and believe that other similarly situated borrowers have requested audio recordings or transcripts of telephone calls between themselves and Freedom Mortgage only to be likewise denied access to that information by Freedom Mortgage. Additionally, Defendant has refused to provide the requested information to Plaintiffs despite their several requests. This is sufficient to demonstrate a "pattern or practice" under RESPA. As such, Freedom Mortgage is liable for statutory damages in an amount of up to $2,000 per violation pursuant to 12 U.S.C. § 2605(f).

# PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court grants Plaintiffs the following relief against Freedom Mortgage:

- That the Court certify this case as a class action;
- That the Court appoint Plaintiffs to serve as class representatives in this matter and appoint Plaintiffs' counsel as class counsel;
- That Freedom Mortgage's wrongful conduct alleged herein be adjudged and decreed to violate the statutes and laws asserted herein; and
- That Plaintiffs and the Class be awarded injunctive relief prohibiting such conduct in the future.

## Violations of Real Estate Settlement Procedures Act
## 12 U.S.C. §§ 2601, *et seq.*

- Injunctive relief prohibiting such conduct in the future;
- Injunctive relief ordering Freedom Mortgage to release audio recordings and transcripts of telephone calls to Plaintiffs and the Class members;
- An award of actual damages according to proof per violation to Plaintiffs and to each member of the Class pursuant to 12 U.S.C. § 2605(f);
- Statutory damages in an amount of $2,000 per violation to Plaintiffs and to each member of the Class pursuant to 12 U.S.C. § 2605(f);
- Attorneys' fees and costs; and
- Any and all further relief that this Court deems just and proper.

///
///
///
///
///
///
///

# TRIAL BY JURY

86. Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiffs are entitled to, and hereby demand, a trial by jury on all causes of action and claims to which they have a right to a jury trial.

Dated: May 3, 2021        **KAZEROUNI LAW GROUP, APC**

By   */s/ Abbas Kazerounian*
       Abbas Kazerounian
       ak@kazlg.com

**KAZEROUNI LAW GROUP, APC**
Alan Gudino (SBN: 326738)
alan@kazlg.com
2221 Camino Del Rio South, Suite 101
San Diego, California 92108
Telephone:  (619) 233-7770
Facsimile:   (800) 520-5523

Attorneys for Plaintiffs,
*Sherry Hogan & Daniel Altman*